IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **AKRIDGE FAMILY DENTAL, INC.,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) |
| | ) CIVIL ACTION NO. 1:20-00427-JB-B |
| | ) |
| **THE CINCINNATI INSURANCE COMPANY,** | ) |
| | ) |
| **Defendant.** | ) |

## ORDER

This matter is before the Court on Defendant The Cincinnati Insurance Company's ("Defendant") Motion to Dismiss Plaintiff's Complaint ("Motion"). (Doc. 6). The Motion has been briefed and a hearing was held on January 28, 2021. Upon due consideration of the filed documents, relevant law and argument at the hearing, the Court finds that Defendant's Motion is due to be **GRANTED**.

**I. BACKGROUND**

Plaintiff Akridge Family Dental, Inc. ("Plaintiff") sued Defendant in connection with Defendant's reservation of rights concerning claims for insurance coverage for losses Plaintiff alleges it sustained because of the COVID-19 pandemic. (Doc. 1).

Plaintiff is a dental practice in Mobile, Alabama insured under Defendant's policy (the "Policy"). (*Id*. at 1-2). Plaintiff's Building and Personal Property Coverage provides: "[w]e will pay for direct 'loss' to Covered Property at the 'premises' caused by or resulting from any Covered Cause of Loss." (Doc. 1-2, PageID.27). As relevant here, the Policy provided Business Income,

Civil Authority and Extra Expense coverage. (*Id*. at 2, 5). The Policy defined those three coverages:

(1) Business Income

We will pay for the actual loss of "Business Income" and "Rental Value" you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by **direct "loss" to property** at a "premises" caused by or **resulting from any Covered Cause of Loss.**

(Doc. 1-2 at 20) (emphasis added).

(2) Extra Expense

(a) We will pay Extra Expense you sustain during the "period of restoration". Extra Expense means necessary expenses you sustain (as described in Paragraphs (2)(b), (c) and (d)) during the "period of restoration" that you would not have sustained if there had been no **direct "loss" to property** caused by or **resulting from a Covered Cause of Loss.**

(*Id*. at 21) (emphasis added).

(3) Civil Authority

**When a Covered Cause of Loss causes damage** to property other than Covered Property at a "premises[,"] we will pay for the actual loss of "Business Income" and necessary Extra Expense you sustain caused by action of civil authority that prohibits access to the "premises[,"] provided that both of [the specified conditions] apply.

(a) Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage; and
(b) The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

(*Id*.) (emphasis added).

The "period of restoration" in the Policy is defined as:

> 11. "Period of restoration" means the period of time that:
>     a. Begins at the time of <u>direct "loss"</u>.
>     b. Ends on the earlier of:
>        (1) The date when the property at the "premises" should be <u>repaired, rebuilt or replaced</u> with reasonable speed and similar quality; or
>        (2) The date when business is resumed at a new permanent location.
>     c. "Period of restoration" does not include any increased period required due to the enforcement of or compliance with any ordinance or law that:
>        (1) Regulates the construction, use or repair, or requires the tearing down of any property; or
>        (2) Requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of "pollutants".

(Doc. 1-2, PageID.40 – 41) (emphasis added).

As highlighted above, each coverage is dependent upon a "Covered Cause of Loss." The Policy defines "Covered Causes of Loss" as a "direct 'loss' unless the 'loss' is excluded or limited in this Coverage Part." (*Id*. at 7). "'Loss' means accidental physical loss or accidental physical damage." (*Id*. at 40). The Policy does not specifically exclude losses caused by the spread of viruses or communicable diseases. (Doc. 1 at 5).

The Complaint alleges the World Health Organization declared the COVID-19 virus a global pandemic on March 11, 2020. (*Id*. at 7). On March 19, 2020, the Alabama State Health Officer required "all elective dental and medical procedures" be delayed. (*Id*. at 10). This order was amended on March 27, 2020, permitting only dental "procedures necessary to treat an emergency medical condition." (*Id*.).

Plaintiff asserts that because of the various orders it was forced to "close its doors to its dental practice." (*Id*. at 12).  Although the March 27 order permitted emergency procedures, Plaintiff claims the procedures it performed constituted only "a *di minimis* portion of [it's] business."  (*Id*. at 13).  Plaintiff made a claim to Defendant for Business Income, Extra Expense and Civil Authority coverage based on this closure.  (*Id*. at 16).  Defendant informed Plaintiff it was investigating the claim under a full reservation of rights.  (*Id*. at 16-17; Doc. 1-9).  Plaintiff seeks a declaratory judgment that its claims constitute covered losses under the policy.

Plaintiff alleges that "[d]ue to the COVID-19 pandemic and the resultant Civil Authority Orders, the physical spaces of these other properties were unable to function in the manners in which they had functioned prior to the COVID-19 pandemic." (Doc. 1 at 15).  Plaintiff claims its loss was "direct" because it "directly and immediately lost the functionality of its property for business purposes due to COVID-19."  (*Id*. at 15).  Plaintiff contends that the loss was "physical" because "[t]he physical space of the Covered Property is unable to function in the manner in which it had functioned prior to the COVID-19 pandemic."  (*Id*.).  Plaintiff's claim culminates alleging "as a result of the COVID-19 pandemic and the Civil Authority Orders, Plaintiff suffered direct physical loss resulting in lost Business Income and incurred Extra Expense."  (*Id*. at 16).

Defendant seeks to dismiss the Complaint because Plaintiff did not sustain "any losses attributable to direct physical loss or damage to property," which is an express requirement for coverage.  (Doc. 7 at 1).  Defendant argues that Plaintiff's Complaint consists of legal conclusions, summary allegations unsupported by fact, and allegations that directly contradict the plain language of the Policy . . .." (*Id*. at 2).  Defendant also argues that Alabama law requires claims like Plaintiff's to allege a direct physical loss or damage to property.

4

**II. LEGAL STANDARD**

Rule 12(b)(6), Fed. R. Civ. P., provides a court may dismiss a claim for failure to state a claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Conclusory statements, assertions or labels will not survive a 12(b)(6) motion to dismiss. *Id*. A plaintiff's claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*; *see also Edwards v. Prime, Inc.*, 602 F.3d 1276, 1291 (11th Cir. 2010). "Factual allegations must be enough to raise a right to relief above the speculative level[.]" *Twombly*, 550 U.S. at 555 (citation omitted). "Although it must accept well-pled facts as true, the court is not required to accept a plaintiff's legal conclusions." *Iqbal*, 556 U.S. at 678.

**III. DISCUSSION**

**A. Alabama Insurance Contract Construction.**

Before considering the parties' arguments, the Court finds it appropriate to review Alabama's principles of insurance contract construction. Matters of insurance contract construction under Alabama law are well-settled. Generally,

> [t]he issue of whether a contract is ambiguous or unambiguous is a question of law for a court to decide. If a word or phrase is not defined in an insurance policy, then the court should construe the word or phrase according to the meaning a person of ordinary intelligence would reasonably give it.

*Crook v. Allstate Indemnity Company*, 2020 WL 3478552, *3 (Ala. June 26, 2020) (internal brackets, citations, and quotation marks omitted). Further,

> [t]he court should not define words it is construing based on technical or legal terms. When analyzing an insurance policy, a court gives words used in the policy their common, everyday meaning and interprets them as a reasonable person in the insured's position would have understood them. If, under this standard, they are reasonably certain in their meaning, they are not ambiguous as a matter of law and the rule of construction in favor of the insured does not apply.  A policy is not made ambiguous by the fact that the parties interpret the policy differently or disagree as to the meaning of a written provision in a contract.  However, if a provision in an insurance policy is found to be genuinely ambiguous, policies of insurance should be construed liberally in respect to persons insured and strictly with respect to the insurer.

*Id*. at *4.  *See also Nationwide Mut. Ins. Co. v. Thomas*, 103 So. 3d 795, 804 (Ala. 2012) (citing *Tate v. Allstate Ins. Co.*, 692 So. 2d 822 (Ala. 1997)).  Further, "an insurance policy must be read as a whole.  The provisions of the policy cannot be read in isolation, but, instead, each provision must be read in context with all other provisions."  *Cowart v. Geico Cas. Co.*, 296 So.3d 266, 270 (Ala. 2019) (quoting *Allstate Ins. Co. v. Hardnett*, 763 So. 2d 963, 965 (Ala. 2000) (quoting *Attorneys Ins. Mut. of Alabama, Inc. v. Smith, Blocker & Lowther, P.C.*, 703 So. 2d 866, 870 (Ala. 1996)).

**B. Interpretation of the Insurance Policy.**

Resolution of Defendant's Motion with respect to each of the claimed coverages turns on whether Plaintiff experienced a "Covered Cause of Loss."  As defined in the Policy, a "Covered Cause of Loss" is a "direct 'loss' unless the 'loss' is excluded or limited" by the Policy.  (Doc 1-2 at 7).  The Policy's coverage provisions states:  "[w]e will pay for **direct 'loss' to Covered Property** at the 'premises' caused by or resulting from any Covered Cause of Loss."  (*Id*. at 5) (emphasis added).  The parties dispute whether this requires an actual impact or change to the building or whether it is sufficient to allege the threat of COVID-19 being present on the Covered Property

6

and those nearby businesses affected by the civil authority orders prevented Plaintiff from operating its dental practice.

This Court has considered the coverage afforded by similar policies in two previous cases. *See Hillcrest Optical, Inc. v. Cont'l Cas. Co.*, 2020 WL 6163142 (S.D. Ala. Oct. 21, 2020); *Drama Camp Prods., Inc. v. Mt. Hawley Ins. Co.*, 2020 WL 8018579 (S.D. Ala. Dec. 30, 2020). In both cases this Court determined the policies did not afford coverage to the plaintiffs because they did not allege a direct physical loss of their property. *See id.* Plaintiff argues this case presents different policy language and different allegations, requiring a different result. While the Court acknowledges minor differences in the policy forms and allegations, the Court nonetheless finds Plaintiff's Complaint fails to state a claim upon which relief can be granted.

Although the phrase "direct physical loss" is not defined in the Policy, the Court finds that its plain and literal meaning (based on certain related definitions in the Policy and applicable case law) requires actual, physical damage to the covered premises. *See Hillcrest Optical,* 2020 WL 6163142; *Drama Camp*, 2020 WL 8018579. This meaning is clear and unambiguous, and the Court therefore will enforce the insurance policy as written. *See Safeway Ins. Co. of Ala., Inc. v. Herrera*, 912 So. 2d 1140, 1143 (Ala. 2005) (stating "[t]he court must enforce the insurance policy as written if the terms are unambiguous.").

In analyzing Defendant's Motion, the Court must set aside Plaintiff's "labels and conclusions" and consider the factual allegations of the Complaint in light of the plain meaning of "direct physical loss" and the plain meaning of and definition in "direct 'loss' to Covered Property." *See Twombly*, 550 U.S. at 555. The pertinent factual allegations accepted as true and viewed in the light most favorable to Plaintiff reflect that: the COVID-19 virus is airborne, easily

transmissible and may be found within Plaintiff's premises; Plaintiff was forced to suspend non-emergency dental procedures due to the various orders and recommendations entered because of the pandemic; businesses in Plaintiff's area were also subject to and affected by those orders. Notably, there is no allegation that Plaintiff had a single confirmed case of the virus in its offices and specifically alleges the limited lifecycle of the COVID-19 virus on surfaces.  These facts fall far short of alleging actual, physical damage to Plaintiff's premises.  Taking all of Plaintiff's factual allegations as true and in the light most favorable to Plaintiff, the Complaint does not allege a "direct 'loss' to covered property" by virtue of the mere existence and proliferation of the COVID-19 virus in the community.  Stated differently, Plaintiff has failed to "nudge[ ][its] claims across the line from conceivable to plausible."  *Twombly*, 550 U.S. at 570.

On facts almost identical to those at bar, the court in *Johnson v. The Hartford Financial Services Group, Inc*. dismissed an action brought by a group of dentists because the plaintiffs failed to allege "that the COVID-19 virus caused any physical damage to the[ir] properties" or that it caused "any tangible alteration to a single physical edifice or piece of equipment."  2021 WL 37573, at *5 (N.D. Ga. Jan. 4, 2021).  The court was not persuaded by the plaintiffs' argument that the damage was caused by "the omnipresent specter of COVID-19."  *Id*.  The *Johnson* court concluded that such "conjecture and speculation" could not defeat a motion to dismiss.  *Id*.

Plaintiff's reliance on the opinions in *Studio 417, Inc. v. Cincinnati Insurance Company*, 478 F. Supp. 3d 794, 796 (W.D. Mo. Aug. 12, 2020) (noting COVID-19 has a physical presence rather than was physically present on plaintiff's property), *Blue Springs Dental Care, LLC v Owners Insurance Company*, 2020 WL 5637963, at *1 (W.D. Mo. Sept. 21, 2020) (denying a motion to dismiss a complaint specifically alleging "actual contamination" and  actual "presence of COVID-

19 on or around plaintiff's property") and *North State Deli, LLC v. The Cincinnati Ins. Co., Inc.*, 2020 WL 6281507 (N.C. Super. Ct. Oct. 9, 2020) (granting partial summary judgment based on business interruption claim arising from mandatory COVID-19 closure orders) as support for a contrary position is misplaced. The Court does not find those cases persuasive because they are contrary to Alabama law, which applies here. *See Hillcrest Optical,* 2020 WL 6163142; *Drama Camp*, 2020 WL 8018579. The Court also disagrees with their reasoning that the potential attachment of a virus with a limited life cycle to the walls of a building could constitute a direct loss to property, or, direct physical damage or direct physical loss. Plaintiff's Complaint does not allege the presence of the COVID-19 virus on Plaintiff's premises. Rather the Complaint alleges COVID-19 was present in the city of Mobile yet Plaintiff remained open for emergency procedures, in accordance with the Orders issued by the Governor and/or other authorities.

The Court finds that the Complaint fails to allege the direct physical loss or damage necessary for coverage under the Policy. This deficiency means that Plaintiff has failed to state a claim upon which relief can be granted. Defendant's Motion (Doc. 6) is **GRANTED**, and this action is **DISMISSED**.

**DONE and ORDERED** this 6th day of May, 2021.

/s/ JEFFREY U. BEAVERSTOCK
UNITED STATES DISTRICT JUDGE